<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DIMPY PATEL, | : | |
| | : | Civil Action No. 08-3586 (JAP) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GEORGE HAYMAN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro se</u>
Dimpy Patel
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

**PISANO**, District Judge

　　Plaintiff Dimpy Patel, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action alleging violations of his constitutional rights.

　　At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and Amended Complaint[1] and are accepted as true for purposes of this review.

Plaintiff alleges that certain of his family members have opened a brokerage account at Firstrade.com to secure his future. Plaintiff also maintains a "debit card" account at Rushcard.com. Plaintiff alleges that in March and April 2007, Defendant Special Investigations Division Investigator Valentine R. Dolce accessed Plaintiff's account information, through an Internet connection, without a warrant and without Plaintiff's permission.  Plaintiff alleges that this action violated his Fourth Amendment right to be free from unreasonable searches.

Plaintiff alleges that in retaliation for his confronting Defendant Dolce, about Defendant Dolce's allegedly unlawful accessing of Plaintiff's account information, Defendant Dolce placed Plaintiff in Temporary Close Custody and issued false disciplinary charges against him.  On May 25, 2007, Defendant Dolce advised Plaintiff that confidential reports indicated that Plaintiff and several other inmates were believed to be

---

[1] It is apparent from a review of the pleadings that the Amended Complaint is intended to supplement the Complaint, not to supersede it.  Accordingly, the Court will consider the allegations of both the original Complaint and the Amended Complaint.

conspiring to smuggle drugs and phones.  Thereafter, Plaintiff
was moved to pre-hearing Management Control Unit.

On July 10, 2007, Plaintiff was given an MCU hearing, based
on an allegedly false criteria sheet prepared by Defendants NJSP
Associate Administrator Donald Mee, Jr., and NJSP Assistant
Superintendent Jeffrey Bell, who also co-chaired the MCU hearing.
Plaintiff was adjudicated guilty of seven charges[2] and received
as sanctions three-and-one-half years of Administrative
Segregation, loss of phone privileges (including telephone calls
to his attorney) for three-and-one-half years, and a temporary
ban on visits.[3]

Plaintiff alleges that in retaliation for his grievance
challenging the temporary ban on visits, Defendants Administrator
Michelle Ricci and Associate Administrator Donald Mee, Jr.,
permanently banned visits with Plaintiff's friends and family
members.

Plaintiff alleges that his incoming and outgoing mail are
being "tampered with."

---

[2] Plaintiff does not identify the disciplinary hearing
officer.

[3] Plaintiff does not allege that he received any sanction
affecting the length of his sentence, e.g., loss of good-time
credits.  Such a sanction would require that this action proceed
in habeas, rather than as a civil rights action, with all
attendant procedural prerequisites, including exhaustion of state
remedies.  See 28 U.S.C. § 2254; Preiser v. Rodriquez, 411 U.S.
475 (1973); Heck v. Humphrey, 512 U.S. 477 (1994); Edwards v.
Balisok, 520 U.S. 641 (1997).

Plaintiff alleges that Defendant Ricci "and her assigned officers" have instituted a pattern of harassment including denying him proper exercise opportunities and by repeatedly issuing false disciplinary charges, which Plaintiff alleges were dismissed or determined to be unfounded, after Plaintiff spent time in pre-hearing detention.  Plaintiff alleges that paralegals are being discouraged from assisting him.

Plaintiff alleges that he has brought these issues to the attention of Defendant Ricci, who has responded to Plaintiff's charges of harassment by saying, "Yah, I'm aware of all that, so what?  Take it to courts, by the time the Judge decides, I'll at least get 2-3 years out of you."

Finally, Plaintiff alleges that Defendant Ricci has retaliated by placing obstacles in the way of Plaintiff's visits with his attorney.

Plaintiff alleges that Defendants Assistant Commissioner James Barbo and Acting Assistant Commissioner Lydell B. Sherrer, participated in the retaliatory actions to deprive Plaintiff of visits.  Plaintiff alleges that Defendant Commissioner George Hayman and unnamed others punished Plaintiff's family members by failing to take any remedial action with respect to the permanent ban on visitation.[4]

---

[4] Plaintiff lacks standing to assert claims on behalf of his family members.  See Warth v. Seldin, 422 U.S. 490, 499 (1975). Accordingly, all such claims will be dismissed without prejudice.

Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what

5

the ... claim is and the grounds upon which it rests.'" <u>Erickson</u> <u>v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  <u>See also</u> <u>Morse v. Lower Merion School</u> <u>Dist.</u>, 132 F.3d at 906 (a court need not credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions").

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United</u> <u>States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u> <u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

6

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 10(b) provides:

> A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances. ...  If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>     (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State

7

> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence." Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).[5]

IV.  ANALYSIS

A.   Request to Proceed as Class Action

Plaintiff seeks certification of this action as a class
action and seeks leave to proceed as the class representative,
apparently on behalf of friends and family who have been
permanently banned from visits with him.

"One or more members of a class may sue ... as
representative parties on behalf of all only if ... (4) the
representative parties will fairly and adequately protect the
interests of the class."  Fed.R.Civ.P. 23(a).  It is well
established, however, that "a prisoner proceeding pro se may not
seek relief on behalf of his fellow inmates."  Alexander v. New

---

[5] The claims against Commissioner George Hayman appear to be
based on a theory of vicarious liability and will, therefore, be
dismissed without prejudice for failure to state a claim.

In addition, Plaintiff names as defendants SID investigators
Harrison and Wojciechowicz.  It is not clear whether Plaintiff
seeks to proceed against these defendants under a theory of
vicarious liability.  In any event, he has alleged no facts
suggesting that these individuals participated in any of the
described events.  Accordingly, all claims against Defendants
Harrison and Wojciechowicz will be dismissed without prejudice
for failure to state a claim.

9

Jersey State Parole Board, 160 Fed.Appx. 249, 249 n.1 (3d Cir. 2005) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action")). Thus, it would not be appropriate to permit Plaintiff to proceed as representative of a class.

In addition, an action may proceed as a class action under Rule 23 only if other specified conditions are met, including the requirement that the class is so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). Here, based on the attachments to the Complaint, the individuals subject to a permanent visitation ban include less than a dozen individuals. Plaintiff cannot meet the numerosity requirement of Rule 23(a)(1).

Accordingly, this Court will not permit this action to proceed as a class action.

B.   Unlawful Search Claim

The Fourth Amendment to the federal Constitution, made applicable to the States by the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

10

U.S. Const. amend IV.  "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."  U.S. v. Jacobsen, 466 U.S. 109, 113 (1984) (footnote and citations omitted).

The Supreme Court has expressly held that a customer has no legitimate expectation of privacy in financial records held by a financial institution and, thus, that a government search of such records does not violate the Fourth Amendment.  See United States v. Miller, 425 U.S. 435 (1976).  Thus, Plaintiff fails to state a claim for unreasonable search under the Fourth Amendment.

Nor does Plaintiff state a claim for violation of the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq.  The RFPA limits access only of "Government authorit[ies]," defined as "any agency or department of the United States, or any officer, employee, or agent thereof."  12 U.S.C. §§ 3401(3), 3403(a).  As the RFPA does not limit access to financial institution records by state employees, Plaintiff fails to state a claim based upon violation of federal law.

Accordingly, the claims for search of Plaintiff's financial records will be dismissed with prejudice.

C.   Claim for False Disciplinary Charges/Due Process Violations

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983);

11

Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir.
1999).

With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the
prisoner is subjected is within the sentence imposed upon him and
is not otherwise violative of the Constitution, the Due Process
Clause does not in itself subject an inmate's treatment by prison
authorities to judicial oversight." Montanye v. Haymes, 427 U.S.
236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v.
Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494
U.S. 210, 221-22 (1990)(prisoner has liberty interest under the
Due Process Clause in freedom from involuntary administration of
psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94
(1980)(prisoner has liberty interest under the Due Process Clause
in freedom from involuntary transfer to state mental hospital
coupled with mandatory treatment for mental illness, a punishment
carrying "stigmatizing consequences" and "qualitatively
different" from punishment characteristically suffered by one
convicted of a crime).

"Discipline by prison officials in response to a wide range
of misconduct falls within the expected parameters of the
sentence imposed by a court of law." Sandin, 515 U.S. at 485
(upholding prisoner's sentence of 30 days' disciplinary
segregation following a hearing at which he was not permitted to

produce witnesses).  See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).  See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).  In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge.  The Court of Appeals did note, however, that

13

if an inmate is committed to undesirable conditions for an
atypical period of time in violation of state law, that is a
factor to be considered in determining whether the prisoner has
been subjected to "atypical and significant hardship" triggering
due process protection.  Id.

   With respect to the procedural requirements of disciplinary
proceedings, "so long as certain procedural requirements are
satisfied, mere allegations of falsified evidence or misconduct
reports, without more, are not enough to state a due process
claim." Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) (citing
Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986) (holding
that "the mere filing of [a false] charge itself" does not
constitute a cognizable claim under § 1983 so long as the inmate
"was granted a hearing, and had the opportunity to rebut the
unfounded or false charges"), cert. denied, 485 U.S. 982 (1988)).
See also Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)
(finding that so long as prison officials provide a prisoner with
the procedural requirements outlined in Wolff v. McDonnell, 418
U.S. 539, 558 (1974), then the prisoner has not suffered a
constitutional violation).  See also Duncan v. Neas, No. 86-109,
1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988) (determining that
"the alleged knowing falsity of the charge [does not state] a
claim of deprivation of a constitutionally protected liberty

14

interest ... where procedural due process protections were provided").

In Wolff v. McDonnell, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  A prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).  In addition, an inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-71.  However, inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. Id. at 567-68.  See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young v. Kann, 926 F.2d 1396, 1404 (3d Cir. 1991); Sanchez v. Roth, 891 F. Supp. 452, 458-59 (N.D.Ill.1995); Harrison v. Pyle, 612 F. Supp. 850, 854-55 (D. Nev. 1985).

15

Nor does due process require that a hearing be held in exact accordance with the time period specified by the applicable New Jersey statutes.  See Burgos v. New Jersey State Parole Board, 2000 WL 33722126, *8 (D.N.J. Aug. 7, 2000) (parole hearings).  In addition, while delay for an extended period of time may violate a prisoner's due process rights, "procedural errors are generally cured by holding a new hearing in compliance with due process requirements."  Id. at *8-9.  See also Johnson v. Paparozzi, 219 F.Supp.2d 635, 642 (D.N.J. 2002).

Finally, the requirements of due process are met if some evidence supports the decision by prison disciplinary hearing officers to issue disciplinary sanctions.  Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Here, the facts alleged do not suggest that Plaintiff was deprived of the procedures mandated by Wolff.  Nor were the sanctions imposed – three and one-half years in Administrative Segregation, loss of phone privileges (including telephone calls to his attorney) for three-and-one-half years, and a temporary ban on visits – such as to amount to "atypical and significant hardship."  See, e.g., Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989) (inmate has no constitutional right of unfettered visitation with a particular visitor).  Accordingly, Plaintiff has suffered no deprivation of a liberty interest as a result of the disciplinary proceeding.

16

Retaliation claims, however, survive Sandin, even when the retaliatory action does not involve a liberty interest. Allah v. Seiverling, 229 F.3d 220, 223-24 (3d Cir. 2000). To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Here, Plaintiff alleges that Defendant Investigator Dolce instituted false disciplinary charges against him in retaliation for his protest against Dolce's accessing Plaintiff's financial records. This claim is sufficient to avoid dismissal at the screening stage.

In addition, Plaintiff alleges that, in retaliation for his appeal of the disciplinary proceeding, Defendants Ricci and Mee instituted a pattern of "vexatious harassment," including instituting a permanent ban on visitation by certain friends and

family members, interfering with his mail, depriving him of exercise, putting up artificial barriers to meetings with counsel, and instituting repeated false disciplinary charges. Plaintiff alleges that the purpose was to isolate him.  Plaintiff alleges that Defendants James Barbo and Lydell Sherrer participated in the decision to impose a permanent ban on visitation in retaliation for Plaintiff's appeal of his disciplinary proceeding.  This retaliation claim may proceed as against Defendants Barbo, Sherrer, Ricci, and Mee, the only named defendants alleged to have personal involvement in the alleged pattern of harassment.

D.   First Amendment "Freedom of Association Claim

A right to intimate association with family members has been held to derive from both the First Amendment right of association and the substantive protections of the Fourteenth Amendment's Due Process Clause.  See, e.g., Roberts v. United States Jaycees, 468 U.S. 609, 617-20 (1984); Santosky v. Kramer, 455 U.S. 745, 753 (1982); Quilloin v. Walcott, 434 U.S. 246, 255 (1978); Moore v. City of East Cleveland, 431 U.S. 494 (1977).  Many courts have recognized a liberty interest in familial relationships other than the parent-child relationship.  See Trujillo v. Board of County Commissioners of the County of Santa Fe, 768 F.2d 1186, 1188-89 (10th Cir. 1985) (and cases cited therein).

18

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication). See also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates). Cf., Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (there is no substantive due process right to "unfettered visitation"). Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." Owens-El v. Robinson, 442 F.Supp. 1368, 1386 (W.D. Pa.) (citation omitted), supplemented and finalized, 457 F.Supp. 984 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).

Nevertheless, "[t]he very object of imprisonment is confinement.  Many of the liberties and privileges enjoyed by

other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration.  And, as our cases have established, freedom of association is among the rights least compatible with incarceration.  Some curtailment of that freedom must be expected in the prison context."  Overton v. Bazzetta, 539 U.S. 126, 131 (2003).

Free citizens possess a coextensive First Amendment right to reach out to those who are incarcerated.  Thornburgh, 490 U.S. at 410 n. 9; Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999).

When a prison regulation or practice impinges on inmates' or free citizens' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  The Supreme Court has identified four factors to be considered in determining the reasonableness of the regulation or practice at issue.

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. ... Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.  Moreover, the governmental objective must be a legitimate and neutral one.  ...

> A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates.  ...

> A third consideration is the impact accommodation of the asserted constitutional right will have on

guards and other inmates, and on the allocation of
prison resources generally.  ...

Finally, the absence of ready alternatives is
evidence of the reasonableness of a prison regulation.
By the same token, the existence of obvious, easy
alternatives may be evidence that the regulation is not
reasonable, but is an "exaggerated response" to prison
concerns.  This is not a "least restrictive
alternative" test.  ...

Turner, 482 U.S. at 89-90  (citations omitted).

Here, Plaintiff alleges that he received disciplinary

sanctions involving a temporary loss of telephone privileges and

a temporary loss of visits with certain family members.  In light

of his alternative means of communication, including written

correspondence and visits with counsel, these temporary sanctions

imposed as legitimate sanctions in response to a disciplinary

proceeding, do not violate Plaintiff's First Amendment

association rights.  Plaintiff alleges further, however, that

Defendants Ricci and Mee later imposed a permanent ban on

visitation with certain individuals, tampered with his mail, and

imposed artificial barriers to interfere with his visits from

counsel.  Thus, Plaintiff alleges limits on all means of

communication with family members: telephone communication,

written correspondence, and visits.  He also alleges artificial

barriers to visits with counsel.  These allegations are

sufficient, at this screening stage of the litigation, to permit

a First Amendment claim to proceed as against Defendants Barbo,

Sherrer, Ricci, and Mee.

21

E.   Eighth Amendment Claim

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation."  Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

22

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

The Supreme Court has held that the temporary withholding of visitation privileges for the purposes of prison discipline does

not violate the Eighth Amendment.  See Overton v. Bazzetta, 539 U.S. at 136-37.  "If the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations."  Id. at 137.  Here, Plaintiff alleges that the withdrawal of visitation privileges with respect to his close family members is both permanent and was applied for a retaliatory purpose.  Accordingly, the Eighth Amendment claim challenging the permanent ban on visitation by close family members may proceed as against Defendants Barbo, Sherrer, Ricci, and Mee.

## V. CONCLUSION

For the reasons set forth above, certain claims will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.[6]

---

[6] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and

An appropriate order follows.


/S/ JOEL A. PISANO
Joel A. Pisano
United States District Judge

Dated: June 18, 2009

---

explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.